IC

SMB

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**RECEIVED**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

APR 16 2024 SMB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Schindler, Robert          )
                           )
_____        )
                           )    24-cv-3057
Plaintiff(s),              )    Judge Manish S. Shah
                           )    Magistrate Judge Maria Valdez
v. Marriott International Inc. )  CAT 2
                           )    RANDOM
& Villiage of Schaumburg    )
                           )
                           )
Defendant(s).              )


## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is __Robert Schindler__ of the county of __Cook__ in the state of __Illinois__.

3. The defendant is __Marriott International Inc.__, whose street address is __7750 Wisconsin Avenue__
(city) __Bethesda__ (county) __Montgomery__ (state) __Maryland__ (ZIP) __20814__
(Defendant's telephone number) (__301__)-__380-3000__

4. The plaintiff sought employment or was employed by the defendant at (street address) __Renaissance Schaumburg 1551 North Thoreau Drive Convention Center Hotel__ (city) __Schaumburg__
(county) __Cook__ (state) __Illinois__ (ZIP code) __60173__

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.      The plaintiff [*check one box*]

(a)   ☐   was denied employment by the defendant.

(b)   ☑   was hired and is still employed by the defendant.

(c)   ☐   was employed but is no longer employed by the defendant.

6.      The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) _June_ , (day) _26_ , (year) _2023 (Beginning)_

7.1     (*Choose paragraph 7.1 or 7.2, do not complete both.*)

(a)   The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☑*has* ☐*has not* filed a charge or charges against the defendant

asserting the acts of discrimination indicated in this complaint with any of the

following government agencies:

(i)   ☑ the United States Equal Employment Opportunity Commission, on or about

(month)_____ (day)_____ (year)_____.

(ii)  ☑ the Illinois Department of Human Rights, on or about
(month)__January__ (day)__26__ (year)__2024__.

(b)   If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☑ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2     The defendant is a federal governmental agency, and

(a)     the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

    ☐ Yes (month)_____ (day)_____ (year)_____

    ☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

    (day) _____ (year) _____.

(c)    Attached is a copy of the

    (i) Complaint of Employment Discrimination,

        ☐ Yes    ☐ No, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

        ☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    (a) ☐    the United States Equal Employment Opportunity Commission has not

        issued a *Notice of Right to Sue.*

    (b) ☑    the United States Equal Employment Opportunity Commission has issued

        a *Notice of Right to Sue*, which was received by the plaintiff on

        (month) December (day) 15 (year) 2023 a copy of which

        *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

    *those that apply*]:

    (a) ☐ Age (Age Discrimination Employment Act).

    (b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

3

(c) ☑ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10.   If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.   Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12.   The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☑ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☑ failed to stop harassment;

(g) ☑ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☑ other (specify): Sought to obtain Plaintiffs

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_Protected Medical & Psychological information_
_illegally_

_Please See Attached Complaint_

13. The facts supporting the plaintiff's claim of discrimination are as follows:

_Please See Attached Complaint_

14. **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☑ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [**check only those that apply**]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☑ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☑ Direct the defendant to (specify): _____
_Please See Attached Complaint_

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g) ☑ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☑ Grant such other relief as the Court may find appropriate.

_Robert Schindler, Prase_
(Plaintiff's signature)

_Robert Schindler_
(Plaintiff's name)

_1544 Williamsburg Drive Unit 181_
(Plaintiff's street address)

(City) _Schaumburg_ (State) _Illinois_ (ZIP) _60193_

(Plaintiff's telephone number) (_312_) – _375 – 7063_

Date: _April 15, 2024_

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Schindler, Robert | ) | Case Number _____ |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Marriott International Inc. & | ) | PLAINTIFF DEMANDS JURY TRIAL |
| Village of Schaumburg, Illinois | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

# COMPLAINT

Comes now, the Plaintiff, Robert Schindler under intense mental anguish and
emotional distress, and to the best of his ability, and complains of Defendants,
Marriott International Inc. "Marriott" and the Village of Schaumburg, Illinois
"Village of Schaumburg", and pray the Court grant him judgement, and for the
cause of action would show the following.

## Relevant Historical Background

1.      In 2012, Plaintiff sought hospitality employment with Marriott International Inc.'s Renaissance Schaumburg Convention Center Hotel "Renaissance" located at: 1551 North Thoreau Drive Schaumburg, Illinois 60173 in Cook County, within the Village of Schaumburg, Illinois.

2.      Plaintiff applied for a Barback position meant to help the bartender at the Hotel's Gather Bar.

3.      Plaintiff was called for an interview and later offered the job.

4.      Plaintiff was scheduled to start work on a busy weekend when the Professional Golfers' Association of America (PGA) international golf tournament was in town and hosted at the Medinah Country Club south of the Renaissance hotel. As a result of the tournament hotels in the area were filled. Plaintiff was asked to perform various employment tasks within the hotel's Sam & Harry's restaurant that he wasn't hired to perform and/or wasn't adequately trained to perform.

5.      Plaintiff was asked to perform the role of server/busboy, but concerns soon arose about his ability to serve food and remove the correct empty dishware given his visual impairment and other characteristics such as environmental factors that included restaurant lighting. Plaintiff informed management of his concerns.

6.      Shortly thereafter (within a week), Plaintiff was wrongfully terminated from employment and the matter was reported to the United States Equal Employment Opportunity Commission "EEOC" and the United States Federal District Court.

7.    Plaintiff was never properly trained for his hired role as a barback or evaluated for satisfactory work performance in that role, nor considered for alternative employment jobs within the hotel. When Plaintiff asked about working in the housekeeping department, where known positions were available, one member of management stated something to the effect, "We may have to 'comp' a room if you miss a hair". Furthermore, Plaintiff was never given ample time to evaluate possible disability accommodations to perform such employment jobs, nor to have sufficient time to seek the assistance of outside disability advocates. It should be noted that a barback role is more stationary and adaptable as compared to a server/busboy role.

8.    This employment situation was reported to both State and Federal agencies and including the courts as well as disability and legal advocates, media on a local, domestic, and international level on principle. The Village of Schaumburg too was made aware of this employment mistreatment considering they exhibit an ownership interest in the property and its business.

9.    This first situation involving the Marriott Renaissance property in Schaumburg, Illinois has caused Plaintiff psychological anguish and emotional distress and serves as a scar on his life story.

3

## Current Complaint

1.      In the Spring of 2022, Plaintiff applied to many hotels in the northwest suburban area of Chicago near his home in Schaumburg, Illinois. He was called in for an interview by the same Marriott property that hired and wrongfully terminated him in 2012. The employment position he was interviewed for was in the hotel's banquets department as a houseman, a role well within his qualifications to help the hotel set up for banquets, weddings, business meetings, and conventions. Plaintiff was later offered the job. Despite the past mistreatment a decade ago, Plaintiff looked at the opportunity positively. Since 2007, Plaintiff has been the victim of dozens of circumstances of mistreatment, discrimination (e.g., employment, educational, volunteer etc.), traumatic events, and even medical malpractice at multiple hospitals in the Chicagoland area in an unprecedented and historical sequence for one person to endure. Additionally, in two separate hospitals, Plaintiff was the victim of being touched inappropriately on camera at one facility and being jumped in the middle of the night at another facility, as a visually impaired individual, with that patient trying to steal Plaintiff's clothes under his own prior to his discharge the next morning. Hospitalizations have involved a dozen separate facilities since 2019 and some most recent comments from staff in October 2023 at Advocate Lutheran General Hospital "ALGH" suggested that hospital settings, especially those for mental health related matters, serve as more of a traumatizing impact on Plaintiff making matters worse not better. Both situations involving Defendants Marriott and Village of Schaumburg and their roles to manage, oversea, and employee competent staff have now left a larger scar on Plaintiff's life.

4

2.      Plaintiff was hired in May of 2022 and worked until January 30, 2023, when he
was admitted to Advocate Lutheran General Hospital in Park Ridge, Illinois following
seizure activity and Major Depressive Disorder (MDD), Post Traumatic Stress Disorder
(PTSD), General Anxiety Disorder (GAD), chiefly. Plaintiff was hospitalized for 3 ½
months prior to being discharged.

3.      Shortly after discharge, Plaintiff informed his employer at Marriott International
Inc. Renaissance Schaumburg Convention Center Hotel of his desire to return to work.

4.      Plaintiff was informed that he needed to procure a "doctor's note" permitting his
return to work.

5.      Plaintiff and his Psychologist, Dr. Shirley Butler, sent copies of the document
necessary for Plaintiff to return to work separately to the employer the help ensure the
document was received from two sources – email and U. S. mail.

6.      Plaintiff took initiative and asked if anything further was necessary for him to
return to work.

7.      Plaintiff was informed by Mrs. Narin Pen "Narin"  – Human Resources
Supervisor and Mrs. Carol Ludwig "Carol" – Human Resources Director that a Health
Insurance Portability and Accountability Act (HIPAA) Authorization to Obtain
Information form "HIPAA form" was necessary as a condition for his return to work.
When Plaintiff reviewed this document, its legal language suggested that "Marriott"
could have unlimited access to his medical and/or psychological records and could use
it for whatever it chooses to do with it now and anytime in the future, "essentially
unlimited lifetime access".

8.     Plaintiff was sent multiple emails from Narin and Carol requesting his signature on the above-mentioned form supporting that their actions were knowing and intentional, but most importantly overseen by Carol Ludwig, the Human Resources Director.

9.     Plaintiff asked what the form was for and why it was necessary to have his signature and further asked if this was common practice for Marriott employees in similar circumstances. Plaintiff was met with no communication and silence.

10.     Plaintiff informed both Narin and Carol that he would seek outside sources to investigate why his signature would be sought on such a document and report the matter to outside agencies. Shortly thereafter, Plaintiff was informed by Carol that his signature wasn't needed for him to return to work and that he could return to work. These knowing and intentional actions raised more suspicion and served as a form of workplace harassment instilling fear in Plaintiff that future retaliation or wrongful termination was possible for such exposure.

11.     Shortly thereafter, Plaintiff was informed that his original "doctor's note" that was deemed sufficient back in May 2023 was not sufficient because it wasn't on doctor's hospital or professional letterhead. Plaintiff's doctor stated that she didn't have hospital letterhead and that her letterhead was professional. After articulating this to both Narin and Carol they soon didn't discuss the matter further.

12.     Plaintiff was given some work schedules via text message and requested an Americans with Disabilities Act (ADA) disability accommodation due to his visual impairment to have work schedules printed or sent via email. Having a print copy would immediately allow for any questions to be answered about the schedule. However, currently, Plaintiff didn't feel comfortable going to the hotel to meet privately and preferred to get schedules via email.

13.     Plaintiff received numerous work schedules over the 20-hour "doctor's note" limitation (several were 24 hours per week).

14.     By August 2023, Plaintiff had already filed an employment discrimination complaint with the EEOC Chicago District Office.

15.     Finally, in September 2023, a work schedule of 18.5 hours involving three shifts of 6.5 hours per week technically met the "doctor's note" 20-hour limitation, but this type of schedule involved three shifts of expected work shy of allowing for a work lunch for an employee returning from having been hospitalized and having endured the additional strain of issues associated with returning to work, essentially an ethical concern was raised here. While Plaintiff has felt uncomfortable talking over the phone he did talk to Rica Ticsay – Banquets Manager and it was apparent that the human resources management and the banquet management weren't on the same page about his returning to work which was consistent with the issues involving the "doctor's note" as she didn't know Plaintiff needed to have a work hour restriction his first month. If someone is returning from being in the hospital, you would reasonably expect that immediate supervisors or managers would know of such restriction for scheduling and accommodations purposes.

16.    Plaintiff, informed hotel management that he planned on returning to university studies at Northeastern Illinois University in 2024 and that a work schedule involving four 5-hour days or five 4-hour days, for a 20-hour maximum to maximize his capacity to make money and comply with the doctor's note

17.    By early October, the collective set of circumstances caused mental anguish and emotional suffering that resulted in Plaintiff being admitted to ALGH for psychiatric reasons. Furthermore, Plaintiff was afraid that he would not be provided adequate help by the EEOC with his recently filed complaint and this too caused anxiety. Evidence exists that this hospitalization in October served as further trauma of "excessive confinement" by the hospital that didn't reflect his behavior for which a public accommodations complaint will be filed at a future date.

18.    In December 2023, a phone conversation was conducted with the EEOC's Chicago District Office investigator Mrs. Amy Yalcin, Plaintiff, and Plaintiff's mother. Plaintiff asked Mrs. Yalcin, "if I had access to a lawyer who could more accurately present my circumstances to yourself and the EEOC, might the EEOC have further investigated my case and she said 'possibly'."

19.    On December 15, 2023, the Chicago District Office of the EEOC issued a Notice of "Right to Sue" letter but didn't send Plaintiff a courtesy copy in the mail per his request for accessible disability accommodations as print copies don't emit light like computer copies which can cause unnecessary eye strain when reading them.

20.     In February 2024 – March 2024, Plaintiff again was hospitalized in three separate hospitals (Endeavor Health – Evanston Hospital, The Loretto Hospital, and Streamwood Behavioral Healthcare System), including one where medical malpractice occurred and should be the focus of future litigation and may involve seeking lawyers help nationwide. These hospitalizations were during half of the 90-day statute of limitations required for an EEOC complaint to be filed in court and involved the last day of those limitations raising questions about Plaintiff's incapacitation in a medical facility serving as a basis to extend such limitations. Furthermore, Plaintiff had been hospitalized in October 2023, well before meeting with the EEOC investigator over the phone in December 2023 and the subsequent issuance of a "Right to Sue" letter by the EEOC which further raises questions about mental stability and when the 90-days should start as a foundation of a "federal question". Given the mistreatment involving the HIPAA form and the malpractice by medical staff in a hospital setting, Plaintiff is justifiably in fear to seek help within a hospital setting or to sign HIPAA related documents due to concerns about them being abused. Moreover, Plaintiff has been asked to sign Family Medical Leave Act (FMLA) forms by Narin and Carol, which justifiably he has felt uncomfortable doing.

21.     This complaint raises three facets about disability discrimination involving an employee's return to their employer from a hospital setting due to their "disability" which caused their hospitalization to be authorized by medical professionals.

    A)     Issues associated with the conditions of an employee's "doctor's note" needed to return to work.

B)     Issues associated with the use of a HIPAA Authorization to Obtain
Information form to cause Plaintiff further suffering.

C)     Issues surrounding obtaining a work schedule compliant to Dr. Shirley
Butler's 20-hour work limit for the first month, to be reevaluated after the
first month for an increase of work hours to full time work present during
previous employment. Narin, Carol, and other relevant managers played
a role in the production or oversight of work schedules that were non-
compliant. Their actions created fear in the Plaintiff and caused him to feel
scared to return to work given the historical mistreatment he has endured
supporting the need for an administrative agency like the EEOC or a court
like the United States Federal District Court to formally intervene and
provide oversight and resolution through proceedings such as mediation,
arbitration, litigation etc. These two matters in 2012 and 2023 involving
Marriott in essence are forms of adult bullying. If this were bullying in a
juvenile setting, the matter could be reported to a school principal or
superintendent and only rarely would go to a high-ranking entity like the
United States Department of Education. It should be noted that when
Plaintiff was young, he delt with a lot of bullying due to his visual
impairment and his Nystagmus eye condition that causes his eyes to roll.
Plaintiff's mother also had to fight for his rights to accessible schooling.
The repetitive mistreatment endured by the Plaintiff since 2007, when
poor facility signage at the University of Illinois at Chicago led him into
the wrong bathroom and he was inhumanely suspended with a scar on
his transcript despite a finding of no guilt in misdemeanor proceedings at

the Cook County, Illinois Courts – Municipal Fourth District Maywood Courthouse – a matter that may still be pursued as unjust and ongoing legal doctrine of "continuous harm and false light," a case that subjected Plaintiff to an illegal strip search at the Cook County Jail that would later become a class action lawsuit itself - and on multiple other fronts, for which he can't explain in this document due to complexity and length, have caused him to contemplate seeking asylum abroad to a country like Germany which has a historically productive record integrating the disabled population into employment jobs, and thus, helping them to overcome societal stereotypes, thereby creating more financial assets for their economy and independence for their disabled citizens, further enhancing their quality of life and human spirit.

21.     Plaintiff has been scared to return to work after his employer flip-flopped about needing a signed HIPAA Authorization to Obtain Information form fearing wrongful termination for a second time or being accused of some form of misconduct. In 2010, Plaintiff volunteered at Advocate Lutheran General Hospital for one year completing 1,002 hours. He was hired in a similar role within the hospital's transportation department from 2010-2012, successfully for two years, then he was accused of misdemeanor behavior of putting graffiti within hospital bathrooms but not afforded a fair and timely trial by jury for the misdemeanor allegations or afforded a fair internal hearing. Evidence existed that the Park Ridge Police Department had conducted an illegal arrest as many people could have conducted the alleged acts. Given Plaintiff's role in transportation and from being a Criminal Justice and Psychology student at the University of Illinois at Chicago (UIC) he knew of more effective locations to present

such material to get attention, helping to cast reasonable doubt on him. Furthermore, Plaintiff had nothing to gain from conducting the alleged acts. Still for such minor allegations, his misdemeanor case was allowed to persist historically in the Cook County, Illinois Courts - Municipal Second District Skokie Courthouse for over three years, amongst efforts to force a supervision plea deal, while many other people had been accused of far worse crimes and even done their time in jails or prisons, it's reasonable for Plaintiff to fear other wrongs could happen to him in this current employment situation, especially for speaking up, and therefore administrative agencies and courts have been sought to resolve and mediate the matter because Plaintiff can't hire a lawyer and address the matter directly. As the employment matter at ALGH was reported locally, domestically, and internationally on principle concerns exist that some recent actions by that hospital involving Plaintiffs hospitalizations may be rooted in negligent and malicious intent.

22.     Plaintiff was hoping that his 2012 employment with Marriott would allow him to engage in some hospitality employment while he considers if he wants to pursue further healthcare employment. Unfortunately, as documented above that didn't occur. Since then,

        Plaintiff has been discriminated against by Macy's Inc. at the Old Orchard Mall Skokie, Illinois store when its management failed to hire Plaintiff based on an unfounded arrest warrant from the above his prior ALGH employment, a finding made by the State of Illinois Department of Human Rights "IDHR". Ironically, Macys Inc. would later rehire Plaintiff on two separate occasions for work holiday stents at its Old Orchard Mall Skokie, Illinois and it's Woodfield Mall Schaumburg, Illinois locations. Plaintiff excelled.

Plaintiff worked for The TJX Companies Inc. HomeGoods store in Schaumburg, Illinois from 2014-2016 in the back of the store receiving merchandise and sought to advance applying for a job in the store's cash office. When management asked how he would cope with his visual impairment he stated with the use of a magnifier. A manager commented that Plaintiff could be a "liability" if he made a mistake. Ironically, sighted people can make mistakes too.

Plaintiff volunteered in 2016-2018 for over 300 hours at Endeavor Health - Northwest Community Hospital "NCH" in Arlington Heights, Illinois, where he had worked as a Certified Nursing Assistant (CNA) from 2001-2004. Plaintiff was abruptly removed from his volunteer work without explanation, but some discussion suggests that Plaintiff's past was a factor despite his positive performance in past employment and volunteer roles at NCH. Plaintiff even held an "Employee of the Month" designation during his time working as a CNA.

Plaintiff has excelled in hospital settings with over six years of volunteer and employment experiences. Still Plaintiff's experience abroad and having also been a Rotary International Youth Exchange student to Thailand and working and loving to study diverse cultures, evident in his university minor in Anthropology, makes him an asset to the hospitality industry. Perhaps this is also evident in his past hospitality coursework at nearby Harper College where he earned a Hotel Management Certificate. One common theme does arise involving Plaintiff's past and present employment and volunteer hosts, both past and present employment and volunteer hosts know that despite allegations or discrimination claims, Plaintiff has been an asset in the medical, hospitality, and retail industries. There have been times when he was mistreated and came back to perform admirably, and there are times when he performed outstanding and was later mistreated, for Marriott it's a combination of the two: a failed opportunity

in 2012 led to an opportunity and success for eight months in 2022, an abrupt stop due to hospitalization and then the circumstances above in this complaint. When viewed in totality, its logical and humane to see why neutral intervention is needed to resolve this case.

23.     While some of this discussion may seem insignificant, wordy, or a waste of time, it shows the unique nature of Plaintiff's circumstances and how Marriott played a role at the beginning of this sequence of events and a more recent one, which has caused so much trauma that Plaintiff has contemplated seeking Asylum from the United States, something that is rare, because he wants to be productive and not discriminated against. Plaintiff is mindful that many people who seek asylum worldwide often have one, two, or a few reasons to contemplate such actions, but Plaintiff collectively has dozens, many that have been reported locally and domestically. It's fair to say that Plaintiff has been persecuted. The actions in both Marriott cases didn't have to happen, it's sad, but this is what keeps driving Plaintiff to not give up because there's always a better way, and today more than ever our world needs a better way, and more knowledgeable way, a more mindful way. People may ask why Plaintiff his discussed information about his hospitalizations if he is so concerned about a HIPAA signature, but he is ready to share his story with the world, to every corner of it and he has nothing to lose, because even when Plaintiff was hospitalized, he was traumatized and should he seek asylum his story will go before a foreign government, and he knows one thing he can say, he comes with the capacity and human spirit to succeed and help any company, community, and country be one person more productive and successful. Hospitalization can't provide a pill to protect someone's rights and many doctors can't comprehend the diverse range of circumstances people go through when they haven't

been there. As a person with a degree in Psychology and nearly 300 college and university credit hours across over 25 disciplines, it's easy for Plaintiff to be empathetic with people seeking asylum or struggling with other troubles domestically or worldwide.

## Federal Question(s)

1.      Is it a violation of an employee's rights as a citizen of the United States of America if their employer, by and through its Human Resources management and staff and ownership, directs the employee to sign as a condition to their return to work after discharge from a hospital, a Health Insurance Portability and Accountability Act (HIPAA) Authorization to Obtain Information form, which would allow the employer access to an employee's sensitive medical and/or psychological records illegally if not required of all employees in a similar situation within the company?

2.      It is common practice that when a "Right to Sue" letter is issued upon review of most complaints of discrimination brought before the United States Equal Employment Opportunity Commission (EEOC) for the complainant to have 90 days from the issuance of that "Right to Sue" letter to file a complaint in United States Federal District Court. What happens if the complainant has been incapacitate in a hospital facility during that 90-day timeline or immediately before the issuance of the "Right to Sue" letter during the EEOC's review phase which could have resulted in the complainant overlooking important things to mention which could in turn have resulted in the EEOC not conducting a formal investigation?

        Given Plaintiff's hospitalization in October 2023, prior to meeting with an EEOC investigator – Amy Yalcin, anxiety was rising that the EEOC wouldn't help him once again, as the agency didn't him in the past deal with multiple instances of employment discrimination reported before that agency.

3.      Should Federal agencies like the EEOC or State agencies like the IDHR be required to look more closely and scrutinize situations when a complainant report that they have been the victim of multiple instances of employment discrimination, especially at multiple different employers from different industries, to help ensure they are afforded the fair opportunity to pursue an employment opportunity to help in them survival and fundamental rights granted to them by State and Federal Constitutions and laws? Our nation, the courts, and society in general want able-bodied people who can work employed as it helps society advance, but if certain people are repetitively subjected to mistreatment, discrimination, and unjust hardship special administrative and/or court procedures should be available to help them, especially if the person involved is from a protected group like the "disabled" population who has historically been victims of employment discrimination and other mistreatment. In 2012, it was Plaintiffs' physical visual impairment "disability", but now in 2023, it is Plaintiffs hospitalization related "disability" that raise questions for the United States Federal District Court for a second time.

## Damages

1.  Economic Compensatory Damages

    A)   Past & Future Lost Wages
    B)   Lost Employment Earning Capacity
    C)   Medical & Hospital Bills
    D)   Ambulance Expenses

2.  Non-Economic Compensatory Damages

    A)   Defendant's cumulative impact on Plaintiffs mental state that led to a
         "near death" experience, including medical malpractice involving staff at
         that hospital, during his recent hospitalization at
         Endeavor Health – Evanston Hospital in February 2024
    B)   Paint & Suffering / Mental Anguish / Emotional Distress
    C)   Long-term Pain & Suffering / Mental Anguish / Emotional Distress
    D)   Loss of Enjoyment of Life / Diminished Quality of Life
    E)   Loss of Consortium
    F)   Loss of Professional Growth
    G)   Embarrassment & Humiliation
    H)   Loss of Opportunity
    I)   Inconvenience

3.  Exemplary / Punitive Damages

    A)   Direct Punitive Damages
    B)   Vicarious Punitive Damages (Doctrine of "Respondent Superior")

4.  Plaintiff Demands Monetary Damages of $5 Million Dollars

5.    Equitable Damages

A)    Lost Front pay
B)    Specific Performance

    a)    Require that Plaintiff's employment relationship with the Marriott, be monitored and reviewed by senior regional or corporate management to help ensure the cessation of future employment mistreatment and/or require that someone from the Village of Schaumburg, Illinois provide oversight (e. g. a social worker) regarding his employment with the hotel property since the village exhibits an ownership role. Given Plaintiff is a client of the State of Illinois Department of Human Services – Division of Rehabilitation Services (IDHS-DRS), who seeks to help clients become employed and independent, perhaps his counselor there should be involved in this employment oversight to help ensure a reduction of psychological anguish.

    b)    Should Plaintiff's return-to-work present circumstances that are too uncomfortable to deal with psychologically given the past and present matters involving the hotel, then he seeks to be considered for transfer to a comparable hotel property and hotel position and compensated accordingly, especially for having to leave a more accessible property near his house. It should be reiterated that given Plaintiffs previous bachelor's degree in Psychology, minor in Anthropology, and other hospitality education, coupled with prior employment involving strong interpersonal communication skills in employment roles within the hospitality, medical, and retail industries, a more complex employment role may benefit Marriott International Inc. and Plaintiff.

19

c)    A formal apology is sought for the negligent, intentional, malicious, egregious, and punitive harm facilitated by Marriott International Inc. and the Village of Schaumburg, Illinois, by and through the actions or inactions of its owners, management, and staff to cause a pattern of grief and suffering to Plaintiff. The Defendant's in this case knew what they were doing to Plaintiff. They know Plaintiff was subjected to discrimination in the past that was demoralizing, and they caused Plaintiff further grief when he sought to return form hospitalization in part because of the employment situation with Marriott from 2012. First, they sought an unnecessary signature on a HIPAA Authorization to Obtain Information form that would grant the company "Marriott" total access to Plaintiff's medical and/or psychological records which was illegal and not common practice for all Marriott employees in a similar situation. They flipflopped about Plaintiff's ability to return to work when he stated that he was going to report the matter creating feelings of fear, being scared, and unsafe of returning to work. Several pieces of evidence show they knew what they were doing and asked for Plaintiff's signature many times as a condition to return to work, Second, the management couldn't determine if the "doctor's note" was suffice on the original letterhead suggesting that the Human Resources management again was struggling with principles that shouldn't be complex. Finally, despite much communication, reasonable accommodation of Plaintiff's hospital-related "disability" wasn't conducted to comply with his "doctor's note" requiring a maximum of 20 hours per week for the first month and to be reevaluated after that period for him to return to full time status as he worked prior to hospitalization. Plaintiff sought to have as much communication over a documented source like email as compared to over the phone. At one point Mrs. Carol Ludwig – Human Resources Director stated that she was going to refuse to communicate via email, but latter continued to do so. Plaintiff believes that the Defendants know what they did was wrong, and like the other suffering he has endured elsewhere, and the many doctors he has talked too about it, they just can't believe it happened to the same person again.

6.    Other Damages the Court Deems Justifiable

## Attachments

1.     Plaintiff's Notice of "Right to Sue" letter issued by the United States Equal Employment Opportunity Commission's Chicago District Office on December 15, 2023.

2.     A related complaint filed with the State of Illinois Department of Human Rights

3.     An Authorization to Obtain Information provided to Plaintiff as a condition for his return to employment. The document appears to be generic to the Renaissance Schaumburg Convention Center Hotel and not a standard company "Marriott International Inc." form. Plaintiff never sought to file a workers compensation claim, nor did he inquire about doing so.

4.     An article outlining how the EEOC itself handled similar issues parallel to Plaintiff's situation involving recently being hospitalized and having endured prolonged psychological distress from this case as it pertains to the extension of the Statute of Limitations for filing a complaint. Ironically, this sample reference shares similarities with Plaintiff's case before this Court, except Plaintiff's circumstances are far more complex and involve Defendants who have engaged in repeat misconduct and subsequent proximate causation of mental distress, which is documented in Plaintiff's case with numerous hospitalizations.

## Conclusion

Given the totality of circumstances involving the mistreatment by Marriott International inc. and the Village of Schaumburg, Illinois which involve two instances of historical employment discrimination at the same hotel property coupled with unprecedented outside impacts and relevance from other employment, volunteer, educational, and hospital related mistreatment, discrimination, medical malpractice, patient mistreatment etc. over a span of a decade between the two employment stents with Marriott International Inc. that this current situation magnifies. Plaintiff believes that he is justified in seeking the above-mentioned damages in this complaint before the Court reflecting solely the actions or inactions of Marriott International Inc. and the Village of Schaumburg not any other entity that may have caused other harm.

Respectfully Submitted,

_____          _____
Robert Schindler, Pro Se Plaintiff                         Date

CONTACT INFORMATION

Address                1544 Williamsburg Drive, Unit B1
                       Schaumburg, Illinois 60193

Phone #                (312) 375 – 7053

Email Address:         IWALFM@yahoo.com

## Conclusion

Given the totality of circumstances involving the mistreatment by Marriott International inc. and the Village of Schaumburg, Illinois which involve two instances of historical employment discrimination at the same hotel property coupled with unprecedented outside impacts and relevance from other employment, volunteer, educational, and hospital related mistreatment, discrimination, medical malpractice, patient mistreatment etc. over a span of a decade between the two employment stents with Marriott International Inc. that this current situation magnifies. Plaintiff believes that he is justified in seeking the above-mentioned damages in this complaint before the Court reflecting solely the actions or inactions of Marriott International Inc. and the Village of Schaumburg not any other entity that may have caused other harm.

Respectfully Submitted,

Robert Schindler, Pro Se Plaintiff

April 15, 2024
Date

CONTACT INFORMATION

| | |
|---|---|
| Address | 1544 Williamsburg Drive, Unit B1 Schaumburg, Illinois 60193 |
| Phone # | (312) 375 – 7053 |
| Email Address: | IWALFM@yahoo.com |



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/15/2023

**To:** Mr. Robert Schindler
1544 Williamsburg Drive Unit B1
SCHAUMBURG, IL 60193
Charge No: 440-2023-09800

**EEOC Representative and email:** AMY YALCIN
Investigator
amy.yalcin@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2023-09800.

On behalf of the Commission,

Digitally Signed By: Diane I. Smason
12/15/2023

Diane I. Smason
Acting District Director

**ATTACHMENT # 1**

**State of Illinois**
Department of Human Rights

**COMPLAINANT INFORMATION SHEET**
*(For All Cases not related to Housing Discrimination)*

| Office Use Only: | Control No: | Inv. Init. | | Date: |
|---|---|---|---|---|

**Instructions: Read this entire form carefully before completing.** Answer all questions and use additional sheets if necessary. This form must be signed and dated on page 4, and postmarked or received by IDHR within **300 days** of the date of the alleged discrimination. **THIS IS NOT A FORMAL CHARGE.** IDHR must determine if Illinois law covers your complaint before we can investigate. If IDHR accepts your claim, we will send you a formal charge document for signature. Return the form by email to IDHR.Intake@illinois.gov or by mail, fax or in person to IDHR.

**NOTE: If your alleged complaint of discrimination is related to Housing, e.g., in buying or renting a house or apartment, or experiencing a refusal to a request to modify your housing, please STOP and fill out an IDHR Housing Complainant Information Sheet (CIS).**

**1. COMPLAINANT INFORMATION** This is you, i.e. the person filing the charge and who alleges they were discriminated against.

| Name: Robert Schindler | | Phone No: (312) 375 - 7053 | Alt. Phone No: |
|---|---|---|---|
| Address: 1544 Williamsburg Drive, Unit B1 | Apt No: | City,State,ZIP: 60193 | |

E-Mail: IWALFM@yahoo.com          ☑ E-Mail Consent: By checking this box, I consent to service of notices by IDHR via electronic mail.

Please provide the following information for statistical purposes only.

| Country of National Origin: | Date of Birth: | Sex: |
|---|---|---|

**2. WHO CAN WE CALL IF WE CANNOT CONTACT YOU?** Make sure their mailing addresses are different from your mailing address. Your charge could be dismissed if you do not provide this information and we are unable to locate you.

| First Contact Name: Marilyn Yunker (Complainant's Mother) | | | Phone No: (224) 730 - 4050 | |
|---|---|---|---|---|
| Address: | City: | State: | ZIP: | |
| Second Contact Name: | | | Phone No: | |
| Address: | City: | State: | ZIP: | |

**3. RESPONDENT INFORMATION** Write out the full legal name of the company or organization that you believe discriminated against you in Illinois (i.e. the Respondent). (Employer, Employment Agency, Financial Institution, Union, Place of Public Accommodation, School or University, etc.)

| Name: Marriott International Inc - Renaissance Brand - Renaissance Schaumburg Convention Center Hotel | Address: 1551 North Thoreau Drive |
|---|---|
| City: Schaumburg | State: Illinois | ZIP: 60173 | Phone No:(847) 303 - 4100 : Main Facility Number |
| County: Cook County | Website:www.marriott.com | | |

**4. WHAT IS YOUR RELATIONSHIP WITH THE RESPONDENT**

☑ **EMPLOYMENT:** Respondent is my Employer / Former Employer / Potential Employer.

    REQUIRED, IF EMPLOYMENT: If the Respondent is an employer, do they employ 15 or more employees in the United States? Yes ○ No ○

☐ **FINANCIAL CREDIT:** Respondent is a Financial Institution, such as a bank or an insurance company, to which I applied for an account or line of credit.

☐ **PUBLIC ACCOMMODATIONS:** Respondent is a Public Entity or Place of Business, such as a Store, Restaurant, Public Park, Educational Program, or Public Official, and has denied me a service or access or has subjected me to pervasive harassment.

☐ **SEXUAL HARASSMENT IN EDUCATION:** Respondent is or represents an Educational Institution in which I (or my minor child) am currently, recently, or I have applied to be enrolled that I believe has sexually harassed me (or my minor child), or has retaliated against me (or my minor child) for reporting, opposing or for participating in an investigation of sexual harassment.

What type of business or organization is the Respondent? For example, a Private Employer, Public or Non-Profit Organization, Government, School or University (specify Public or Private, and grade level, etc., and your current enrollment status), Employment Agency, Municipality, Union, Bank, Insurance Company, Individual, etc.
**Public Company**

DEPT. OF HUMAN RIGHTS
INTAKE DIVISION

JAN 26 2024

RECEIVED

**ATTACHMENT # 2**

555 West Monroe Street, 7th Floor, Attn. Int[...]
In Springfield: 524 S 2nd Street, 3rd Floor, [...]                                       [...]63 (TTY)

Illinois Department of Human Rights

**COMPLAINANT INFORMATION SHEET**

## 5. DESCRIPTION OF THE ISSUES AND BASES YOU ARE REQUESTING IDHR TO INVESTIGATE

*Each of your COMPLAINTS of discrimination must contain two (2) parts: the ISSUE and the BASIS.*

- The ISSUE is the harm or action that was taken against you. (Such as being discharged from your employment or being denied access to a public service.)
- The BASIS is the legally protected class you believe is the reason for the action that was taken against you. Your complaint can have multiple bases.
- IDHR can only investigate ISSUES alleging one or more of the following specific BASES of discrimination:

| | | | |
|---|---|---|---|
| o Age (+40) | o Military Status | o Sex | o Citizenship Status |
| o Ancestry/ National Origin | o Order of Protection Status | o Sexual Harassment | o Conviction Record |
| o Arrest Record | o Pregnancy | o Sexual Orientation / | o Language |
| o Color (Skin Tone/Complexion) | o Race | Gender Identity | ✓ Work Authorization Status |
| ✓ Disability (Physical or Mental) | o Religion | o Unfavorable Military Discharge | |
| o Marital Status | | | |

✓ Retaliation (for prior discrimination complaint or testified at discrimination hearing)

---

**1st COMPLAINT**: Describe the ISSUE/HARM (as described above). Be specific and concise.

Discrimination associated with returning to work after having been hospitalized. The Director of Human Resources Carol Ludwig and Human Resources Supervisor Narin Pen requested that I complete a HiPAA Authorization Form as a condition to return to work. I felt suspicious of why I was being asked to sign such a form and requested an explanation and communication becamse silent. I then informed them that I was planning to report the matter to outside agencies and seek an explanation of why my signature on such a form would bee sought and if it was being done to other associates to create equal treatment and a non-discriminatory work enviomment. I was almost immeddiately told that they didn't need the form signed and that I could return to work creating more suspicion as to the motive(s) of seeking access to my medical records given I have been past discriminated by this same hotel property due to my visual impairment in 2012, whiich was reported to the U. S. EEOC.

| BASIS: (as described above) Disability/Retaliation/Work Status | Date(s) of ISSUE/HARM: Monday June 26, 2023 |
|---|---|

Name and Job Title of the person who committed the action or gave you this information:
Director of Human Resources: Carol Ludwing and Human Resources Supervisor: Narin Pen

Why do you feel discriminated against because of the BASIS you have identified, or how has this action created a hostile or offensive environment?
The hotel is already aware of my visual disability. By having returned from hospitalization the hotel was aware of some sort of impariment that resulted in me being hospitalized. The hotel's Human Resources staff sought medical/psychiatric information in an unfair manner compared to other associates and didn't justify such actions, they then cleared me to work when I indicated I would report the matter. These actions raised questions about motives as their behavior was knowing and intentional. This has caused a hostile environment my of return to work

---

**2nd COMPLAINT**: Describe the ISSUE/HARM (as described above). Be specific and concise.

The second major issue has involved me obtaining a "Doctor's Note" to return to work and subsequent failure many times to comply with that Doctor's Note. Initially, In May 2023 (after hospitalization discharge) my doctor provided a letter that the Human Resources staff said was sufficient for me to return to work, when I asked if this is all that was needed, they attempted to have me sign the above-mentioned HIPAA Authorization Form, which I refused to do then I was told the initial Doctor's Note was insufficient and needed to be on hospital letterhead, which my doctor didn't have, then I was told by the Human Resources staff that they diddn't need the Doctor's Note on such letterhead. Hotel Human Resources staff and Banquet Managers were then unable to comply with the Doctors Note limiting me to 20 hours/per week my first month and then to be reevaluated after the first month to return to full time work. This matter has also created a hostile evironment of my return to work.

| BASIS: (as described above) Disability/Retaliation/Work Status | Date(s) of ISSUE/HARM: Multiple dates and forrms of evidence |
|---|---|

Name and Job Title of the person who committed the action or gave you this information:
Director of Human Resources: Carol Ludwig and Human Resources Supervisor: Narin Pen

Why do you feel discriminated against because of the BASIS you have identified, or how has this action created a hostile or offensive environment?
My original Doctor's Note was deemed sufficient and I should have been returned to work in May 2023, making money since that time, but a sequence of unjust actions impeded on this occuring including Human Resources staff flip-flopping on several matters, requesting things not requested of similar employees across the Marriott International Inc. organization, and inability to follow a Doctor's Note to return me to work. This has caused lost income, mental anguish, and played a role in causing a two-week hospitalization in October 2023, among other things.

## 6. IF YOU HAVE BEEN EMPLOYED BY THE RESPONDENT, PLEASE FILL IN THE FOLLOWING:

| Your Job Title: Banquet Houseman | Supervisor: Robert (Bob) Weller |
|---|---|

Please use additional sheets as necessary to provide the above information for each complaint.

Illinois Department of Human Rights

# COMPLAINANT INFORMATION SHEET

## 7A. If you are filing based on SEXUAL HARASSMENT:

| Name of the harasser: | | | |
|---|---|---|---|
| Job Title of harasser: | Address: | | |
| City: | State: | ZIP: | Phone No: |

Do you want the sexual harasser charged separately as an additional Respondent?  ◯ Yes  ◯ No

Identify the date(s) and describe the action(s) taken against you. Use additional sheets, if necessary. Common examples include: Unwelcome sexual advances,  Requests for sexual favors, Quid pro quo (actions  contingent upon sexual conduct) or creating a hostile or offensive environment.

When and how did you reject the conduct or make it known that the conduct was unwelcome?

## 7B. If you are filing based on PHYSICAL DISABILITY or MENTAL DISABILITY:

Describe your medically diagnosed disability/disabilities. Explain when and how the Respondent learned about your disability/disabilities:

Marriott International Inc. and the above-mentioned Renaissance property knew about my visual impairment from a past employment matter. My hospitalization in the Spring of 2023 was due to some type of impairment that halted me work on January 30, 2023 and my mother had to inform the hotel of my hospitalization. I then was discharged and notified the hotel of my desire to return to work. The hotel's Human Resourcces staff then sought discriminate aginst me with a HIPAA Authorization Form.

## 7C. If you are filing based on RETALIATION:

| Name of the retaliator: Carol Ludwig | Job Title of  retaliator: Director of Human Resources |
|---|---|

Was the retaliation against you within the normal job duties of the retaliator?   ◯ Yes   ⦿ No
NOTE:  If "Yes", IDHR does not have jurisdiction over the individual retaliator.

If "No", do you want the retaliator charged separately as an additional Respondent?   ⦿ Yes   ◯ No

| Provide contact information for the retaliator. | Address:1551 North Thoreau Drive | | |
|---|---|---|---|
| City: Schaumburg | State:  Illinois | ZIP: 60173 | Phone No: |

State how you opposed unlawful discrimination: (i.e., testified at a discrimination hearing, filed a prior discrimination complaint, or complained about unlawful discrimination).  Include dates, charge numbers, and/or the name or title of the person to whom you complained.
Historically, I filed an EEOC complaint against the hotel which it is unclear if Carol Ludwig was aware of. I then filed my more recent EEOC Charge # 440-2023-10132 as this sequence of events involving my return to work have unfolded.

## 7D.  If your complaint involves DENIAL OF FINANCIAL CREDIT: Explain your understanding of the qualifications necessary to obtain credit from the institution, and how you met those qualifications:

## 8. HAVE YOU FILED A GRIEVANCE OR COMPLAINT INTERNALLY WITH THIS RESPONDENT?
(Such as a Human Resources Department, Manager, Customer Service Center, Union, Advocacy Group, or Guidance Counselor)

If "Yes", to whom did you submit the complaint (name and job title), on what date(s), and what were the results of your complaint thus far?
No because the issues that have arisen have directly involved Human Resources staff and the Director of Human Resources creating a tense set of circumstances and raising the potential that if such an opportunity existed to file an internal grievance or complaint its handling would not be fair.

## 9. HAVE YOU FILED A PREVIOUS CHARGE AGAINST THIS RESPONDENT WITH IDHR OR ANOTHER INVESTIGATORY AGENCY OR COMMISSION? (Such as the EEOC, US Dept. of Education, or the US Dept. of Labor)

⦿ Yes  ◯ No    If "Yes", when? United States Equal Employment Opportunity Commission    Charge Number(s):440-2013-01356

You must sign and date the last page of this form

**Illinois Department of Human Rights**
**COMPLAINANT INFORMATION SHEET**

**10. MEDIATION:** IDHR offers free mediation, where a neutral person will talk to you and the Respondent to see if your complaint can be resolved before an investigation. If both parties agree to participate, mediation may resolve your case faster. Mediation conferences are held at IDHR's Chicago office or virtually/online. If the case is not resolved at Mediation, the case will be investigated.

Are you interested in Mediation?  ◉Yes  ◯No       Learn more about IDHR's Mediation Program on our website

**11. ASSISTANCE:** Do you need special assistance from IDHR to communicate with you about this matter?

☐ Non-English language or sign language interpreter (specify language)_____

☐ Disability assistance (specify assistance)_____

☐ Other (specify)_____

### IDHR Notice of Accessibility

IDHR is accessible to persons with disabilities in compliance with the ADA and the Rehabilitation Act of 1973. A person needing an accommodation to participate in IDHR programs should contact the ADA Coordinator at: 312-814-6262, 866-740-3953 (TTY), or e-mail IDHR.ADA@illinois.gov. IDHR provides interpreters upon request for sign language and for languages other than English. If a party chooses to use their own interpreter, the interpreter must be at least 18 years of age and able to communicate effectively in both languages. For information, email IDHR.LEP@illinois.gov.

### Notice to complainant on release of identity and personal information

The Illinois Human Rights Act ("Act"), 775 ILCS 5/1-101 *et seq.*, and IDHR's Rules and Regulations, 56 Ill. Admin. Code, Ch. II, Section 2520.330, require a charge to contain certain information in such detail as to substantially apprise the parties of the time, place, and facts with respect to the alleged civil rights violation. Pursuant to IDHR's Rules and Regulations (2 Ill. Admin Code, Ch. X, Section 926.210), anyone who submits information to IDHR in connection with a discrimination charge should take notice and be aware of the following. During IDHR's investigation:

(a) All contents and files maintained by IDHR pertaining to charges shall be confidential and not subject to public disclosure. Relevant exceptions are:
(1) the parties and non-parties to a charge may inspect the file at any time subsequent to the written notice of substantial evidence, default, or dismissal, administrative closure, or approval of terms of settlement by the Human Rights Commission ("Commission");
(2) after the filing of a Complaint with the Commission or the institution of judicial proceedings involving a charge, the Director may release information pertaining to the charge if such information is requested of IDHR or if the Director finds such information newsworthy, useful in education or training, relevant to an issue before the General Assembly, or similarly appropriate for disclosure.
(b) Authorized personnel within IDHR analyze information that IDHR collects. This information may include personal information. IDHR staff may need to reveal some of the personal information to individuals outside the office in order to verify facts related to the charge, or to discover new facts which will help IDHR to determine whether the law has been violated. IDHR may need to disclose to Respondent correspondence that IDHR receives from Complainant or other sources.
(c) After the completion of the investigation, IDHR may release the investigation file, which includes the identity and personal information of the parties pursuant to a Freedom of Information Act ("FOIA") request, a subpoena or a court order, and information submitted to or obtained by IDHR may also be revealed to persons outside of IDHR to enforce a Commission Order or a settlement agreement.
(d) No person is required to file a charge with IDHR and reveal personal information to IDHR; however, if a person files a charge and IDHR cannot obtain the information needed to fully investigate the allegations in the charge, IDHR may close the case.

### CONSENT AGREEMENT AND RELEASE

I have read the provided "Notice to Complainant" and I understand that:

1) If my charge is regarding employment, IDHR may also file my charge of discrimination with EEOC if it has jurisdiction, and I authorize EEOC to look into the discrimination alleged above; 2) In the course of investigating my charge, IDHR will reveal my identity (including my name) and my personal information to named Respondent(s) in my charge to obtain facts and evidence regarding my charge; 3) I do not have to reveal my personal information to IDHR, but IDHR may close my charge if I refuse to reveal information needed to fully investigate my charge; 4) IDHR may be required by law, subpoena, court order, and/or FOIA request to disclose my charge and information in IDHR's investigation file concerning my charge to persons outside of IDHR.

If IDHR takes a charge based on the information provided, I consent for IDHR to disclose my identity and personal information as necessary to process and investigate my charge, and I release IDHR from any liability whatsoever concerning disclosure of my identity and any personal information I provided to IDHR or IDHR obtained in processing my charge.

**My signature below verifies the accuracy of the information provided herein and my consent and release as indicated above.**

Print Name  Robert Schindler       Signature *Robert Schindler*  Date  Friday January 26, 2024

NOTE: If there is certain personal information you would like withheld, please discuss your concern with an Intake supervisor.



## AUTHORIZATION TO OBTAIN INFORMATION

I authorize any licensed physician, medical practitioner, pharmacist, hospital, clinic, other medical or medically related facility, insurance or reinsuring company, consumer reporting agency or employer having information available as to diagnosis, treatment, causation, and prognosis with respect to any physical or mental condition and/or treatment of me to give any and all such information to the particular company in the Marriott group of companies ("Marriott") to which I am submitting a claim, or to its legal representative.

I understand that pursuant to the Health Insurance Portability and Accountability Act ("HIPPA"), a covered entity may disclose protected health information (PHI) as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. I further understand that medical information relating to my workers' compensation claim and received by Marriott, in its capacity of employer, does not constitute PHI under HIPPA.

I understand the information obtained by use of this authorization may be used by the Company, its third-party administrators, rehabilitation/medical management nurses, vocational counselors, examining medical practitioners, and legal representatives to determine eligibility for workers' compensation benefits. The Company, its third-party administrators, rehabilitation/medical management nurses, vocational counselors, examining medical practitioners, and legal representatives may forward information pertaining to my job requirements to any medical practitioner rendering treatment to me when said information is germane to the diagnosis, treatment, causation, and prognosis of my physical or mental condition.

I know that I may request a copy of this authorization.
I agree that a photographic copy of this authorization shall be as valid as the original.
I agree this authorization shall be valid during the pendency of my claim.
I agree that this authorization may only be revoked in writing.

_____
Signature

# ATTACHMENT # 3

_____
Printed or typed name

_____
Date and file number (if known)

Thursday, March 14th, 2024

🛒 Federal Employee Handbooks (/store)

FEDweek Handbooks 🛒 (/store/)



(https://www.fedweek.com/sto
re/fers-retirement-planning-
guide/)
**BUY NOW: FERS Retirement
Guide 2024**
(https://www.fedweek.com/sto
re/fers-retirement-planning-
guide/)

📥 Issue Briefs (/reports/)



(https://www.fedweek.com/rep
orts/fehb-get-the-most-our-of-
your-federal-health-insurance/)
**FEHB: Get the Most Our of Your
Federal Health Insurance in
2024**
(https://www.fedweek.com/rep
orts/fehb-get-the-most-our-of-
your-federal-health-insurance/)

Forum (/forum/)

**Q: .1% "bonus" annuity if I work
as a reemployed annuitant
until 62?**
(https://www.fedweek.com/for
um/60-year-old-with-31-years-
considering-retiring-and-
becoming-half-time-
reemployed-annuitant/)

💬 Questions forum (/forum/)

ADVERTISEMENT

## Fedweek Legal (/news/fedweek-legal)

### EEOC Excuses Untimely Filing

*Published: May 19, 2010 (https://www.fedweek.com/fedweek-legal/federal-legal-corner-eeoc-excuses-untimely-filing/)*
*More in: Fedweek Legal (https://www.fedweek.com/news/fedweek-legal/)*

*By: fedweek*

In a recent EEOC decision, the Commission held that the time limit for filing a formal EEO complaint can be extended if the employee produces sufficient evidence to establish that he was unable to meet the time limit because of mental or physical incapacitation. See Butler v. United States Postal Service, EEOC Appeal No. 0120100055 (March 3, 2010). The employee was a postal police manager who alleged that he was discriminated against on the bases of his sex, race, disability and age when he was issued a negative evaluation. The employee initiated EEO contact on June 16, 2009, and on July 16, 2009, he received notice of his right to file a formal complaint. On August 7, 2009, the employee filed his formal complaint.

An employee is required to file a formal complaint within 15 days of receiving notice of the right to file a formal complaint. See 29 C.F.R. § 1614.107(a)(2). Therefore, the agency dismissed the employee's formal complaint as untimely after determining it was filed three days over the 15-day time limit.

On appeal, the EEOC reversed the agency's decision and reinstated the employee's formal complaint for an EEO investigation. The Commission has consistently held in cases involving physical or mental health difficulties that an extension is warranted where the individual is so incapacitated by his condition that he is unable to meet the regulatory time limits. However, the medical evidence must establish incapacity, not merely that the employee suffered from a medical condition.

In another case, the EEOC had held that an employee's complaint was untimely when the employee missed the 15-day deadline to file her formal complaint because the statements from her

ADVERTISEMENT

# ATTACHMENT # 4

THE FEDERAL EMPLOYEES' LEGAL HANDBOOK



(/store/the-federal-employees-legal-handbook/)

Understand your rights and restrictions as a federal employee with this comprehensive legal handbook for the federal workplace.

View handbook (/store/the-federal-employees-legal-handbook/)

ADVERTISEMENT



TULLY RINCKEY
ATTORNEYS & COUNSELORS AT LAW

If you're a federal employee with a legal issue, you need the assistance of a federal employment lawyer experienced in handling your unique employment circumstances.

Contact Tully Rinckey today to schedule a consultation.

CALL (888) 964-7725
WWW.TULLYLEGAL.COM

(https://www.tullylegal.com/legal-services/federal-employment-law/?
utm_source=fedweek&utm_medium=banner)

🖼 View Fedweek Legal Archives (/news/fedweek-legal)

physicians indicated she suffered from depression, but the documentation did not establish she was incapacitated such that she was unable to file her complaint for the almost six months she delayed. See Smith v. United States Postal Service, EEOC Appeal No. 01A55920 (February 6, 2006). Yet, in this case the Commission concluded that an extension of time was warranted because the employee's psychologist indicated that the employee was receiving treatment for major depression at the time he was required to file his complaint, and he was incapable of acting in a timely manner because of his lack of energy, focus and concentration. Consequently, the Commission found that the employee was incapacitated by major depression, and thus, excused the untimeliness of his formal complaining.

*More in: Fedweek Legal (https://www.fedweek.com/news/fedweek-legal/)*

**Like this article? Sign up to receive more** 📧 **(/newsletters/)**

← **Federal Legal Corner: MSPB Mitigates Penalty for Hatch Act Violation (https://www.fedweek.com/fedweek-legal/federal-legal-corner-mspb-mitigates-penalty-for-hatch-act-violation/)**

**Federal Legal Corner: Possible Retaliation in Reassignment →
(https://www.fedweek.com/fedweek-legal/federal-legal-corner-possible-retaliation-in-reassignment/)**

## ⚖️ DIVORCE

**Divorce and the Thrift Savings Plan (https://www.fedweek.com/legal-reference/divorce-thrift-savings-plan/)**

**Divorce and Other Benefits (https://www.fedweek.com/legal-reference/divorce-and-other-benefits/)**

**Divorce and Life Insurance (https://www.fedweek.com/legal-reference/divorce-life-insurance/)**

**Divorce and Health Insurance (https://www.fedweek.com/legal-reference/divorce-health-insurance/)**

**Divorce and Retirement (https://www.fedweek.com/legal-reference/divorce-and-retirement/)**

## ⚖️ APPEAL RIGHTS & PROCEDURES

**Alternative Dispute Resolution (https://www.fedweek.com/legal-reference/alternative-dispute-resolution/)**

**Office of Special Counsel (https://www.fedweek.com/legal-reference/office-special-counsel/)**

**Office of Personnel Management (https://www.fedweek.com/legal-reference/office-personnel-management/)**

**Merit Systems Protection Board (https://www.fedweek.com/legal-reference/merit-systems-protection-board/)**

**Federal Labor Relations Authority (https://www.fedweek.com/legal-reference/federal-labor-relations-authority/)**

**Equal Employment Opportunity Commission (https://www.fedweek.com/legal-reference/equal-employment-opportunity-commission/)**

## ⚖️ OTHER RIGHTS

**RIF and Furlough Appeals (https://www.fedweek.com/legal-reference/rif-and-furlough-appeals/)**

**Special Appeal Rights for Veterans (https://www.fedweek.com/legal-reference/special-appeal-rights-for-veterans/)**

**Probationary Period (https://www.fedweek.com/legal-reference/probationary-period/)**

## ⚖️ DISCIPLINE

**Alternative Discipline (https://www.fedweek.com/legal-reference/alternative-discipline/)**

**Conduct-Based Discipline (https://www.fedweek.com/legal-reference/conduct-based-discipline/)**

**Chapter 43 Actions (https://www.fedweek.com/legal-reference/chapter-43-actions/)**

**Performance-based discipline (https://www.fedweek.com/legal-reference/performance-based-discipline/)**

**Dealing with problem employees (https://www.fedweek.com/legal-reference/dealing-with-problem-employees/)**

## ⚖️ MANAGERS & SUPERVISORS

**Administrative Grievances (https://www.fedweek.com/legal-reference/administrative-grievances-2/)**

**Whistleblower Protections (https://www.fedweek.com/legal-reference/whistleblower-protections/)**

**Sexual Harassment (https://www.fedweek.com/legal-reference/sexual-harassment/)**

**Discrimination (https://www.fedweek.com/legal-reference/discrimination/)**

**Prohibited Personnel Practices (https://www.fedweek.com/legal-reference/prohibited-personnel-practices/)**

**Merit Systems Principles (https://www.fedweek.com/legal-reference/merit-systems-principles/)**

## 📄 UNIONS

**Unfair Labor Practices (https://www.fedweek.com/legal-reference/unfair-labor-practices/)**

**Union Grievances (https://www.fedweek.com/legal-reference/union-grievances/)**

**Rights to Representation (https://www.fedweek.com/legal-reference/rights-to-representation/)**

**Negotiated Contracts (https://www.fedweek.com/legal-reference/negotiated-contracts/)**